**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **SOUTHWEST AIRLINES CO.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civ. Action No.  1:12cv00062-LO-TRJ** |
| **v.** | ) | |
| | ) | |
| **HILTON HHONORS WORLDWIDE, L.L.C.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN SUPPORT OF HILTON
HHONORS WORLDWIDE, L.L.C.'S MOTION TO DISMISS**

Pursuant to Local Civil Rule 7(F), Defendant Hilton HHonors Worldwide, L.L.C. ("Hilton")

submits this Memorandum in Support of its Motion to Dismiss, and states as follows:

## INTRODUCTION

On May 1, 2006, Hilton and Southwest Airlines Co. ("Southwest") entered into an

agreement allowing their customers to participate in the other's frequent traveler programs. *See*

Compl. ¶¶ 12-17; Ex. A to Compl. (hereinafter "Agreement").    While the Agreement recognized

the importance of protecting both companies' confidential information, it also expressly allowed

Hilton and Southwest to use and disseminate their own independently obtained data.  Southwest's

Complaint does not address these permissive portions of the Agreement, and it fails to state a claim

for breach of contract or misappropriation of trade secrets under Virginia Code Ann. § 59.1-337 on

which relief can be granted.

## BACKGROUND AND FACTS ALLEGED[1]

### I.    THE AGREEMENT AND ITS TERMS

Southwest and Hilton operate rewards programs for frequent travelers who use their services. Compl. ¶¶ 13, 15.  Through Southwest's Rapid Rewards program, frequent flyers can earn Rapid Rewards points redeemable for free airline travel. *Id.* ¶ 13.  Similarly, through the Hilton HHonors Reward Program ("Hilton HHonors"), Hilton HHonors members ("HHonors Members") can earn and redeem points that can be used for a range of benefits including complimentary hotel stays at one of the many hotels in the Hilton Worldwide portfolio ("Hilton Hotels"). *Id.* ¶14. Seeking a strategic expansion of their respective customer loyalty programs, Hilton and Southwest executed the Agreement, which allowed their respective customers to earn additional benefits through the other's loyalty program. *Id.* ¶ 16.    Under the Agreement, HHonors Members could earn Rapid Rewards points for qualifying stays at participating Hilton Hotels, and HHonors Members could convert their Hilton HHonors points to Rapid Rewards airline credits that they could redeem for free air travel from Southwest. *Id.* ¶ 17.

The Agreement also allowed the parties to access each other's exclusive customer database and to contact the other company's customers for direct mail promotions or targeted marketing opportunities.  Agreement §§ 6.1, 7.1. The Agreement defined Southwest's customer database and any portion of the database provided to Hilton during the term of the Agreement, as the SWA List. *Id.* § 1.9.  Likewise, the parties defined Hilton's customer database and any portion of the database provided to Southwest during the term as the HHonors List.  *Id.* § 1.8.  Recognizing that these exclusive customer lists would not have been available to the other company absent the Agreement, the parties specifically defined the term "Confidential Information" to include the SWA List and

---

[1] Hilton assumes the facts alleged in the Complaint are true for purposes of this Motion to Dismiss only.

HHonors List, *id.* § 12.1.2, and they provided a number of remedies for the "Unauthorized Disclosure" of Confidential Information, *id.* § 12.1.6.

At the same time, the parties recognized that the Agreement should not restrict them from using information about their own customers or dual customers that they independently obtained – information they could have acquired regardless of their access to the other's exclusive customer list. *See id.* § 12.1.3. Accordingly, the Agreement contains multiple permissive provisions stating that nothing prevents either party from disclosing information that was (a) already known; (b) part of the public domain; (c) independently obtained; or (d) disclosed pursuant to the valid legal process of a government agency. *Id.* § 12.1.3; *see also* § 12.1.6(2) ("neither party shall be prohibited from using its own Proprietary List, even though such list may contain the names of customers of the other party"). These provisions, coupled with the protections to the SWA and HHonors Lists, struck the proper balance of protecting the parties' exclusive customer lists while ensuring that the Agreement would not overburden or restrict either party from using its own data.

## II.     THE JANUARY EMAILS

On December 31, 2011, the Agreement expired. Compl. ¶ 18. Shortly thereafter, in early January 2012, Hilton sent two emails (the "January Emails") to HHonors Members, one which contained a special promotional offer to earn bonus frequent flyer miles with American Airlines and another reminding these HHonors Members that their earning style option was reset to Points and Points as they could no longer earn Southwest credits through the HHonors Program. *Id.* ¶ 21; Exs. B & C to Compl. According to the plain language of the January Emails, Hilton sent these offers to current HHonors Members who previously elected to earn Rapid Rewards credits through the HHonors Program. *Id.* ¶¶ 22, 25; Exs. B & C to Compl. Although Southwest contends that the January Emails "were made in direct contravention of the confidentiality provisions contained in

Section 12 of the Agreement" because they "improperly utilized the identity of members of Southwest's Rapid Rewards program[,]" Southwest never alleges that Hilton used or relied on the SWA List in compiling the recipient list for the January Emails. *See generally* Compl. In fact, Southwest fails to allege any facts related to the source of the customer information Hilton used for the January Emails. *See generally id.*

This failure is fatal to several of Southwest's claims. According to its plain terms, the Agreement permitted Hilton to use and disclose publically available and independently obtained information in any manner that it chose, without exception. *See* Agreement § 12.1.3. Without an allegation that Hilton used Southwest's exclusive customer information obtained from the SWA List, Southwest has not alleged a breach of the Agreement. Southwest has not and cannot provide such allegation, and it has failed to state a claim against Hilton on which relief can be granted.

## CHOICE OF LAW PRINCIPLES

The Agreement, as amended,[2] contains the following broad choice of law provision applying the law of New York:

> **Governing Law.** All questions with respect to the construction of this Second Amendment and the rights and liabilities of the parties hereunder and in connection with the Agreement, shall be governed and interpreted pursuant to the internal laws of the State of New York, USA, excluding any laws regarding the choice or conflict of laws.

2nd Am. Agreement § 5. Fourth Circuit courts will enforce choice of law and forum selection clauses unless they are unreasonable or against public policy. *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996); *Senture, LLC v. Dietrich*, 575 F. Supp. 2d 724, 727 (E.D. Va. 2008). Likewise, choice of law provisions are presumptively valid under New York law. *See C3 Media & Mktg. Group, LLC v. FirstGate Internet, Inc.*, 419 F. Supp. 2d 419, 429 (S.D.N.Y. 2005) (quoting

---

[2] The parties amended the Agreement twice. Compl. ¶ 18.

*Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000)); *see also Lumbermens Mut. Cas. Ins. Co. v. Darel Group U.S.A.*, 253 F. Supp. 2d 578, 582 (S.D.N.Y. 2003) (evaluating similar choice of law provision stating "the rights and liabilities of the parties [are] determined, in accordance with the laws of the State of New York"). Accordingly, the substantive law of the State of New York governs this dispute.

## STANDARD OF REVIEW

A district court must grant a motion to dismiss "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). While the Court must take all factual allegations made in a complaint as true, *see Eastern Shore Markets, Inc. v. JD Assocs. Ltd. P'ship*, 214 F.3d 175, 180 (4th Cir. 2000), the United States Supreme Court recently heightened a plaintiff's pleading requirements in *Bell Atlantic Corp. v. Twombly*, 127 S Ct. 1955 (2007). To survive a motion to dismiss, the "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." 127 S. Ct. at 1965. Indeed, the Fourth Circuit has concluded that the Supreme Court's decision in *Twombly* establishes a regime that is "more favorable to dismissal of a complaint" at the earliest stages of a case. *See Giarratano v. Johnson*, 521 F.3d 298, 306 n.3 (4th Cir. 2008).

Specifically, a plaintiff's claim must be dismissed if he fails to allege "enough facts to state a claim for relief that is plausible on its face" such that he has "nudged [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

In *Iqbal*, the Court established a two-step approach for determining whether a complaint

may survive dismissal.   First, a district court need not accept legal conclusions as true, as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . ."  *Iqbal*, 129 S. Ct. at 1949-50.   Second, only a complaint that states a plausible claim for relief should survive a motion to dismiss, and making such a determination is a "context specific" task where the court must apply its judicial experience and common sense.  *Id.*  Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of the truth."  *Id.*

## ARGUMENT

I.     **THE FACTS ALLEGED IN COUNT I DO NOT GIVE RISE TO A BREACH OF SECTION 12 OF THE AGREEMENT.**

By focusing on certain self-serving portions of the Agreement and ignoring those provisions that favor Hilton, Southwest claims Hilton breached Section 12 by (i) misappropriating and misusing Southwest's confidential information and (ii) targeting solicitations to Southwest customers and Rapid Rewards members.  Compl.  ¶ 47.  Both theories are flawed and subject to dismissal.

In order to state a claim for breach of contract under New York law, a plaintiff must allege four elements: (1) the existence of an agreement; (2) adequate performance by the plaintiff; (3) breach of the agreement by the defendant; (4) recoverable damages.  *Advanced Mktg. Group, Inc. v. Business Payment Sys., LLC*, 300 Fed. Appx. 48, 49 (2d Cir. N.Y. 2008).  In this case, the Agreement as a whole coupled with the allegations and exhibits in the Complaint demonstrate that Hilton did not breach Section 12 by allegedly disseminating the January Emails.

A.     **Hilton Did Not Disclose Confidential Information in the January Emails.**

The term "Confidential Information" has a specific definition in the Agreement.  *See* Agreement §§ 12.1, 12.1.1, 12.1.2.  Confidential Information is defined as (i) the Agreement and its

terms; (ii) any information designated by a party as confidential; and (iii) information obtained from each company's exclusive customer information list, defined for Southwest as the "SWA List". *Id.* Confidential Information does not mean the identity of or any information related to the other company's customers. *Id.* §§ 12.1 - 12.1.6. To the contrary, Hilton and Southwest recognized that they may independently obtain information related to the other's customers through their own efforts or through the public domain, and they expressly excluded this material from the definition of Confidential Information. *Id.* §§ 12.1.3 – 12.1.5.

In the Complaint, however, Southwest erroneously assumes that any identifying information of its customers is Confidential Information. *See* Compl. ¶¶ 27, 28, 34-36. (equating "the identity of Southwest's customers and Rapid Rewards members" with "confidential information"). Based on this misinterpretation, Southwest concludes that, if Hilton revealed its customers' identities in the January Emails, it follows that Hilton necessarily disclosed Confidential Information. *See id.* That is not the case.

In order for Hilton to have divulged Confidential Information in the January Emails, the emails must have disclosed (i) the Agreement itself, (ii) information specifically pre-labeled by Southwest as confidential, or (iii) information obtained from the SWA List. Agreement §§ 12.1, 12.1.1, 12.1.2. Southwest does not allege Hilton disclosed the Agreement or certain data pre-designated as confidential. *See generally* Compl. More significantly, Southwest never describes the source of the data that Hilton used for the January Emails or alleges that Hilton obtained this information from the SWA List. *See generally id.* In fact, Southwest never alleges that it provided Hilton access to its exclusive customer information under Section 6.1 of the Agreement or that Hilton ever received *any information* from the SWA List. As a result, Southwest fails to lay the necessary foundation to demonstrate that the January Emails were derived from, included, or

disclosed any Confidential Information.

Instead, the only allegation regarding the source of the customer list used for the January Emails is contained in the Exhibits to the Complaint. *See* Exhibits G & E to Compl. In ruling on a Rule 12(b)(6) motion to dismiss, courts may consider all exhibits attached to the complaint. *United States ex rel. Constructors, Inc. v. Gulf Ins. Co.*, 313 F. Supp. 2d 593, 596 (E.D. Va. 2004). Moreover, in the event of conflict between the allegations of the complaint and any attached exhibit, the exhibit prevails. *Id.* (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)). In this case, Exhibits E & G refute the contention that Hilton used information obtained from the SWA List and demonstrate that it only used data obtained from its own proprietary sources. Specifically, Hilton states that Southwest "apparently assumes that a SWA List was utilized for the promotions . . . . However, Hilton HHonors used its own Proprietary List, as contemplated by Section 12.1.6(2) of the Agreement." Ex. E to Compl. Hilton further reassured Southwest that "[s]ince the termination of the Agreement, Hilton HHonors has only used customer information obtained from its own proprietary HHonors List . . . ." Ex. G. to Compl.

Southwest does not allege otherwise or contest these statements in the Complaint. *See generally* Compl. Consequently, Southwest fails to allege facts to demonstrate that the January Emails relied upon or relayed Confidential Information, and the motion to dismiss should be granted as to Southwest's claim in Count I that Hilton violated Section 12 by "misappropriating and misusing Southwest's confidential information, including but not limited to the identity of Southwest's customers and/or Rapid Rewards members." *See* Compl. ¶ 47.

**B.   The Agreement Permits Hilton to Use its Own Independently Obtained Data.**

Southwest's failure to allege that Hilton derived the customer list used for the January Emails from Confidential Information is crucial to its second theory of breach of Section 12.

Southwest claims that the January Emails violated Section 12 because those emails allegedly targeted Southwest customers. Compl. ¶¶ 19-26, 47. Southwest, however, fails to identify several crucial provisions in Section 12 that expressly permit correspondence like the January Emails under certain circumstances.

First, Section 12.1.6(2) allows Hilton to use its own customer list in any manner it sees fit, stating: "neither party shall be prohibited from using its own Proprietary List, even though such list may contain the names of customers of the other party." Agreement § 12.1.6(2).   Section 12.1.3 expands on this rule stating,

> Nothing provided herein shall prevent User from disclosing information that User can demonstrate (a) was already known to it prior to receipt of such information from Owner; (b) is or hereafter becomes part of the public domain through no fault of User; (c) is developed or obtained independently by User; or (d) is disclosed pursuant to the valid legal process of a government agency.

Agreement § 12.1.3. These provisions demonstrate the parties' unmistakable intent to allow each other to use their own customer lists and information without restriction.

It is also important to note the interplay between Section 12.1.3 and Section 12.1.6. By its terms, Section 12.1.6 was intended to provide "Protection of the SWA List and HHonors List" by creating a series of "Remedies for Unauthorized Disclosure." Agreement § 12.1.6. Section 12.1.3, however, states that "**Nothing** provided herein shall prevent User from **disclosing information**" under the four listed categories. Agreement § 12.1.3 (emphasis added).   Stated another way, if a party obtained information through one of the listed categories in Section 12.1.3, disclosure of that information cannot constitute an "Unauthorized Disclosure" in violation of Section 12.1.6 regardless of how that information was disclosed, disseminated, or targeted. If the allegations in the Complaint demonstrate that the January Emails fall into one of the categories of exception in Section 12.1.3, the January Emails cannot constitute a violation of Section 12.1.6 under any

circumstances.

Here, the Complaint establishes that Hilton derived the customer list for the January Emails solely from its own proprietary customer information. *See* Exs. E & G to Compl. This activity is expressly permitted under Section 12.1.3(c), and it cannot constitute a breach of the Agreement regardless of how Hilton used, disseminated, or targeted that information. Southwest's breach of contract claim cannot survive this exception to the unauthorized disclosure provisions, and therefore this Court should grant Hilton's motion to dismiss Count I for breach of Section 12.

### C.   Southwest Does Not Allege that Hilton Targeted Current Southwest Customers.

Count I alleging breach of Section 12 also fails because the Complaint does not state that Hilton targeted current Southwest customers. Southwest relies on the language in Section 12.1.6(2) prohibiting the parties from targeting or soliciting a consumer "because that consumer **is** (a) a customer of the other party or (b) a participant in the other party's frequent traveler program." Compl. ¶ 20 (citing Agreement § 12.1.6(2)) (emphasis added). By its plain terms, this provision only applies to current Southwest customers. Nothing in the Agreement prohibits Hilton from sending correspondence to HHonors Members who previously selected the option to earn Southwest credits in addition to HHonors points for qualifying hotel stays.

According to the Complaint, however, Hilton sent the January emails to "Hilton HHonors™ member[s] who **previously earned** Southwest Airlines Rapid Rewards® Points". *See* Compl. ¶¶ 22, 25 (emphasis added). Sending email correspondence to HHonors Members – even targeting those who formerly earned Southwest miles for qualifying stays at Hilton properties – does not violate Section 12.1.6(2). Accordingly, Southwest cannot state a claim for violation of Section 12 based on the January Emails, and Count I should be dismissed.

## II.   SOUTHWEST FAILS TO ALLEGE ANY DAMAGES THAT RESULT FROM THE USE OF ITS TRADEMARK.

Like Count I, Southwest's second cause of action for breach of Section 8 is deficient on its face.   Southwest claims Hilton violated Section 8 by using its "Rapid Rewards" registered trademark in the January Emails.  Compl.  ¶¶ 50-51.  This claim fails as a matter of law because Southwest does not allege facts to support its legal conclusion that it suffered damages as a result of the alleged breach.

Damages are an essential element of a breach of contract claim under New York law.  *See LNC Investments, Inc. v. First Fidelity Bank, N.A. New Jersey*, 173 F.3d 454 (2d Cir. 1999); *Century 21 Real Estate, LLC v. Raritan Bay Realty, Ltd.*, No. CV 07-1455 (CPS) (JO), 2008 U.S. Dist. LEXIS 109507, *41 n.7 (S.D.N.Y. July 24, 2008) ("a showing of damages is an essential element of a contract claim").  It is well-established that plaintiffs must plead facts to support this element or the claim is subject to dismissal.  *Gordon v. Dino De Laurentiis Corp.*, 141 A.D.2d 435, 436 (N.Y. App. Div. 1988); *see also Colina v. One E. River Place Realty Co.*, No. 99 Civ. 5173 (DC), 2000 U.S. Dist. LEXIS 11728, *28 (S.D.N.Y. Aug. 15, 2000); *Hudson v. Loretex Corp.*, No. 95-CV-844 (RSP/RWS), 1997 U.S. Dist. LEXIS 4320, *15-16 (N.D.N.Y Apr. 2, 1997).

Southwest's claim for breach of Section 8 relies on a single, conclusory allegation to support its damages claim: "[a]s a result of Hilton's breach of the Agreement, Southwest has been harmed and will continue to be harmed."  Compl.  ¶ 52.  This allegation does not meet the minimal pleadings requirements under *Iqbal*, as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . ."  129 S. Ct. at 1949-50.  Rather, Southwest must support this element with factual allegations because, under New York law, in "the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint".  *See Lexington 360 Assocs.*, 651 N.Y.S.2d at 492 (internal

quotations and citations omitted); *see also Colina v. One E. River Place Realty Co.*, 99 Civ. 5173 (DC), 2000 U.S. Dist. LEXIS 11728 at *28. New York courts have strictly applied this rule in a similar context of an alleged disclosure of confidential information. *See Gordon v. Dino De Laurentiis Corp.*, 141 A.D.2d at 436.

In the background allegations of the Complaint, however, Southwest fails to provide any factual support for its recitation of the damages element of this claim. *See id.* ¶¶ 12-43. In the supporting facts relating to Count II, Southwest focuses only on the alleged breach, and it fails to even mention damages incurred. *Id.* ¶¶ 38-40. While Southwest later cites Section 12.1.6(9) of the Agreement regarding contractually defined irreparable harm, this provision only applies to the use of Confidential Information "in a manner not permitted by this Section 12." Compl. ¶ 41; Agreement § 12.1.6(9). By its terms, this provision does not apply to an alleged violation of Section 8. *See* Agreement § 12.1.6(9).

Moreover, Southwest's claim for the alleged loss of goodwill has no plausible causal connection to Hilton's use of the term "Rapid Rewards". *See* Compl. ¶ 42. Southwest's own allegations make clear that this theory of harm arises specifically from the alleged improper targeting of its customers, and not through the use of its trademarks. *Id.* In order to state a valid claim for breach of the Agreement under Section 8, Southwest must allege some form of damages that arose, not from the act of solicitation in the January Emails, but from the use of the trademark alone. The Complaint is devoid of such allegations. Therefore, Southwest has failed to state a claim for breach of Section 8 of the Agreement, and Count II should be dismissed. *See Colina v. One E. River Place Realty Co.*, No. 99 Civ. 5173 (DC), 2000 U.S. Dist. LEXIS 11728 at *28; *Lexington 360 Assocs.*, 651 N.Y.S.2d at 492; *Gordon v. Dino De Laurentiis Corp.*, 141 A.D.2d at 436.

III.   **SOUTHWEST'S VIRGINIA UNIFORM TRADE SECRTES ACT CLAIM FAILS AS A MATTER OF LAW.**

The Virginia Uniform Trade Secrets Act ("VUTSA") creates a statutory cause of action for misappropriating the trade secrets of another.  Va. Code Ann. § 59.1-336; *see also Othentec Ltd. v. Phelan*, 526 F.3d 135, 141 (4th Cir. 2008).   Here, Count III does not state a VUTSA claim for three reasons (i) New York does not recognize this cause of action; (ii) the Complaint does not contain facts demonstrating the existence of a trade secret; and (iii) Southwest fails to allege that Hilton misappropriated protected information.

A.   **The Virginia State Law Trade Secrets Claim is Barred by the Choice of Law Provision.**

Southwest's VUTSA claim fails as a matter of law because it is barred by the parties' choice of law provision.   In executing the Second Amendment to the Agreement, the parties elected to use a broad choice of law clause in which

> All questions with respect to . . . the rights and liabilities of the parties hereunder and in connection with the Agreement, shall be governed by . . . the laws of the State of New York, USA, excluding any laws regarding choice or conflict of laws.

2nd Am. Agreement § 5.  New York has not adopted any version of the Uniform Trade Secrets Act,[3] and therefore, Southwest cannot state a claim under Virginia Code Ann. § 59.1-337.

When a party asserts a cause of action that does not exist under the laws of the jurisdiction selected in the choice of law provision, New York courts dismiss the unrecognized claims.  *See Rayapratama v. Bankers Trust Co.*, Case No. 95 Civ. 0786 (JSM), 1995 U.S. Dist. LEXIS 11961, *9-10 (S.D.N.Y. Aug. 16, 1995).  For example, in *Rayapratama v. Bankers Trust Company*, the parties' choice of law provision applied the law of England, and the District Court for the Southern

---

[3] Maura Irene Strassberg, *An Ethical Rabbit Hole: Model Rule 4.4, Intentional Interference with Former Employee Non-Disclosure Agreements and the Threat of Disqualification, Part II*, 90 Neb. L. Rev. 141, 195 n.24 (2011).  According to Marua Strassberg, Professor of Law at Drake University Law School, "[s]ome version of the Uniform Trade Secrets Act has been adopted in every state except Massachusetts, New Jersey, New York, North Carolina and Texas." *Id.*

District of New York dismissed multiple federal RICO and commodities law claims that were not recognized under English law. *Id.* at *5-10.

In this case, New York is one of the few states that has not enacted a comprehensive trade secrets statute like the Uniform Trade Secrets Act.[4]   Because the parties elected New York law to govern their "rights and liabilities . . . in connection with the Agreement", Southwest cannot assert this Virginia state law claim that does not exist in New York.  Accordingly, Count III asserting the VUTSA claim should be dismissed with prejudice.

Furthermore, even if Southwest could assert a Virginia state law claim in this case, which it cannot, it has failed to adequately allege facts to support the elements of a VUTSA violation.

**B.**      **Southwest Fails to Allege the Existence of a Valid Trade Secret.**

To survive a Rule 12(b)(6) motion to dismiss to a VUTSA cause of action, a plaintiff must allege sufficient facts to demonstrate the existence of a trade secret. *McKay Consulting, Inc. v. Rockingham Mem. Hosp.*, 665 F. Supp. 2d 626, 633-634 (W.D. Va. 2009); *see also All Bus. Solutions, Inc. v. NationsLine, Inc.*, 629 F. Supp. 2d 553, 558 (W.D. Va. 2009). Va. Code Ann. § 59.1-336 defines a trade secret as information that "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use".

In this case, Southwest generally alleges that its "confidential information" is a trade secret, Compl. ¶ 54-55, and it claims Hilton disclosed this information and the identity of its customers through the January Emails, *id.* ¶56.  Other than the identity of its customers, Southwest never specifies what "confidential information" or trade secrets Hilton allegedly misused. *See generally id.*  Simply alleging that a defendant disclosed a customer list and other unspecified "confidential

---

[4] *See* Strassberg, *supra* note 3, 195 n.24.

information", however, does not meet minimum pleading requirements to state a claim under VUTSA. *See All Bus. Solutions, Inc.*, 629 F. Supp. 2d at 558-59.

Moreover, Southwest overstates the meaning of "trade secret" in the same way it misinterprets the term Confidential Information. *See, supra* § I.A.  By definition, information that is reasonably ascertainable through proper means is not a trade secret.  Va. Code Ann. § 59.1-336; *see also McKay Consulting, Inc.*, 665 F. Supp. at 635.  Yet Southwest claims that "the identity of any Southwest customer and/or Rapid Rewards member" is a trade secret, regardless of how Hilton obtained that information.  *See* Compl. ¶ 56.  That is incorrect.

To plead the existence of a trade secret, Southwest must allege facts to indicate that the specific customer data used for the January Emails was not readily ascertainable to Hilton without relying on the Southwest List.  *See McKay Consulting, Inc.*, 665 F. Supp. at 634-35.  Southwest has failed to meet this threshold requirement because it does not address the fact that Hilton sent the January Emails to its own customers based on its own proprietary information and did not use the Southwest List or Southwest data.  *See* Exs. E & G to Compl.  Put simply, Hilton's data about its own customers' air travel affiliations is not a Southwest trade secret.  Because Southwest fails to allege the existence of a valid trade secret, its VUTSA claim should be dismissed.  *See McKay Consulting, Inc.*, 665 F. Supp. at 634-35.

### C.   Southwest Fails to Allege Misappropriation.

In addition to the element of a valid trade secret, Southwest must also plead facts to demonstrate that Hilton misappropriated the trade secret.  *See id.* at 633-34; *BB&T Ins. Servs. v. Thomas Rutherfoord, Inc.*, 80 Va. Cir. 174, 184-5 (Va. Cir. Ct. 2010); *Rohrbaugh v. Kreidler*, 71 Va. Cir. 298, 304 (Va. Cir. Ct. 2006).  VUTSA defines misappropriation as the:

1. Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by **improper means**; or

2. Disclosure of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by **improper means**; or

    a.   Used **improper means** to acquire knowledge of the trade secret; or

    b.  At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was

        (1) Derived from or through a person who utilized **improper means** to acquire it;

        (2) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;

        (3) Derived through a person who owed a duty to the person seeking relief to maintain its secrecy or limits use; or

        (4) Acquired by accident or mistake.

Va. Code Ann. § 59.1-336 (emphasis added).

In this case, Southwest fails to provide a single allegation related to the "means" Hilton used to obtain the customer lists used for the January Emails. *See generally* Compl. Southwest also does not allege Hilton acquired the customer list used for the January Emails by accident or mistake. Accordingly, the only way in which Hilton could have misappropriated Southwest's trade secrets is through a breach of duty to maintain its secrecy or limit its use. *See* Va. Code Ann. § 59.1-336(2)(b)(2)-(3).

Hilton, however, only assumed a duty to protect the SWA List and other narrowly defined Confidential Information. *See, supra*, Section I.A; Agreement § 12. It had no obligation to maintain the secrecy or limit the use of its own proprietary information and customer list. Agreement §§ 12.1.3; 12.1.6(2). Because Hilton derived the information used in the January Emails from its own data, *see* Exs. E & G to Compl., it did not "misappropriate" Southwest's customer list, and it did not violate VUTSA. Thus, like Southwest's breach of contract counts, its VUTSA claim is fatally flawed and Count III is subject to dismissal.[5]

---

[5] Even if this Court is inclined to allow Southwest to amend its Complaint, Southwest cannot properly state a VUTSA claim under any assembly of the facts. Southwest's VUTSA claim is

## CONCLUSION

Southwest assumes that because the January Emails reference Southwest Airlines, Hilton necessarily violated the Agreement. That conclusion is incorrect, and it is not supported by the Agreement. The parties crafted their contract to protect their exclusive customer lists that, but for the Agreement, the other company would not have been able to access. The Agreement does not prevent them from collecting information from their customers and then using that data for promotional opportunities. In fact, it expressly allowed them to do so through the exceptions to wrongful disclosure in Section 12.1.3.

Without an allegation that Hilton obtained and disseminated Southwest's truly exclusive information from the SWA List, Southwest has not stated a claim for breach of Section 12 of the Agreement or misappropriation of trade secrets in Counts I and III. Further, without a factual basis to support Southwest's claim for damages arising from the use of its trademark, it has failed to state a claim for breach of Section 8 of the Agreement in Count II. Southwest cannot make these necessary allegations, and therefore the Complaint is deficient and subject to dismissal. For these reasons, this Court should dismiss the Complaint for failure to state a claim on which relief can be granted.

---

fatally flawed and barred by the Agreement's choice of law provision, and therefore Count III should be dismissed with prejudice.

Dated:  February 24, 2012

Respectfully submitted,

/s/ John D. Wilburn
John D. Wilburn (VSB # 41141)
Michelle D. Gambino (VSB # 70708)
Stephen Mulligan (VSB #78858)
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia 22102
Phone: (703) 712-5000
Fax:  (703) 712-5050
jwilburn@mcguirewoods.com
mgambino@mcguirewoods.com
smulligan@mcguriewoods.com

*Counsel for Defendant Hilton HHonors Worldwide, L.L.C.*

## CERTIFICATE OF SERVICE

I, the undersigned, electronically filed the foregoing with the Clerk of Court using the

CM/ECF system, which will send a copy of the foregoing this 24th day of February, 2012 to:

> Karla L. Palmer
> Hyman Phelps & McNamara, PC
> 700 Thirteenth Street, N.W., Suite 1200
> Washington, DC 20005
> Tel: (202) 737-5600
> Fax: (202) 737-9329
> kpalmer@hpm.com

I further certify that I caused copies of the foregoing to be sent via United States mail to the following:

> Brett D. Jaffe
> Lawrence J. Lee
> Matthew V. Povolny
> Cohen & Gresser LLP
> 800 Third Avenue
> New York, NY 10022
> Tel: (212) 957-7600
> Fax: (212) 957-4514
> bjaffe@cohengresser.com
> llee@cohengresser.com
> mpovolny@cohengresser.com

> *Attorneys for Plaintiff Southwest Airlines Co.*

> /s/ John D. Wilburn
> John D. Wilburn (VSB # 41141)
> McGuireWoods LLP
> 1750 Tysons Boulevard, Suite 1800
> Tysons Corner, Virginia 22102
> Phone: (703) 712-5000
> Fax: (703) 712-5050
> jwilburn@mcguirewoods.com